EVELYN B. HORN, WARDEN *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(6177)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 8—decision released September 6, 1988

*Theresa A. Hopkins,* special counsel, with whom, on
the brief, was *Mitchell W. Pearlman,* general counsel,
for the appellant (named defendant).

*Carl J. Schuman,* assistant attorney general, with
whom, on the brief, were *Joseph I. Lieberman,* attor-
ney general, and *Cornelius F. Tuohy,* assistant attor-
ney general, for the appellee (plaintiff).

BORDEN, J. The named defendant, the freedom of
information commission (FOIC), appeals from the judg-
ment of the trial court reversing an FOIC decision. That
decision declared null and void a sixty-day suspension

of a state employee who was wrongfully denied access to documents in the possession of the department of correction which were relevant to an impending disciplinary action. The issue dispositive of this appeal is whether the FOIC abused its discretion in nullifying the suspension based upon a violation of the Freedom of Information Act (FOIA).[1] We conclude that, under the circumstances of this case, the FOIC order regarding the employment sanction imposed on the state employee constituted an abuse of discretion, and, accordingly, we find no error.[2]

The facts of this case are undisputed. On August 21, 1984, the defendant Robert Nichols, an employee of the department of correction, was interviewed by the plaintiff, the warden of the Hartford Community Correctional Center, concerning allegations that on twelve occasions in 1982, 1983 and 1984, Nichols had called in sick for his regular shift at the correctional center on days he worked at a second job at Bulkeley High School in Hartford. The purpose of the interview was to allow Nichols an opportunity to respond to the allegations prior to the imposition of disciplinary action. During the interview, the plaintiff referred to a document on her desk that was Nichols' attendance sheet from his second job. At the interview, Nichols requested that he be allowed to inspect the attendance sheet. His request was denied on the ground that the attendance sheet had been received by a department of correction personnel officer and was the basis for the disciplinary action. On August 23, 1984, Nichols was notified

---

[1] The Freedom of Information Act is set forth in General Statutes §§ 1-15, 1-18a, 1-19 through 1-19b, 1-20a through 1-21a, and 1-21c through 1-21k.

[2] The plaintiff has presented this court with an alternative ground for affirmance of the trial court's decision, namely, that the FOIC lacked the statutory authority to review and nullify state agency employment action based upon a violation of the FOIA. In light of our disposition of the case on the grounds upon which the trial court sustained the plaintiff's administrative appeal, we need not address this issue.

of his suspension by the department of correction for sixty days without pay.

By letter dated August 29, 1984, Nichols again made a request of the plaintiff to inspect the documents in his personnel file. Receiving no response to his request, Nichols filed a complaint with the FOIC.

While the matter was pending before the FOIC, Nichols filed a grievance concerning his suspension. As part of the grievance process, Nichols was shown the attendance sheets. Following the hearing before the FOIC hearing officer but before the FOIC issued its final decision, the grievance proceeded to the arbitration level where Nichols and the department of correction reached a stipulated agreement in "full and final settlement" of the grievance, in which the length of the proposed suspension was reduced from sixty days to thirty days and the grievance concerning the suspension was "withdrawn with prejudice."

Prior to the time when the FOIC issued its final decision, the plaintiff moved to remand the matter to the hearing officer to consider the effect of the settlement agreement on the proposed order. By doing so, and by including a copy of the settlement agreement with the motion, the plaintiff made the settlement agreement part of the administrative record before the FOIC at the time of its final decision.

Thereafter, the FOIC issued its decision in accordance with the hearing officer's proposed order, finding that the plaintiff had withheld public records in violation of the FOIA and that the plaintiff's refusal to grant Nichols access to his records had severely prejudiced his ability to respond to the charges against him. The FOIC then ordered (1) that the action of the plaintiff in issuing a sixty-day suspension was null and void, (2) that the plaintiff restore to Nichols any wages lost

as a result of the suspension, and (3) that the plaintiff make available to all correctional center employees information in their own personnel files pursuant to the FOIA. The trial court sustained the plaintiff's appeal from the decision of the FOIC.[3] This appeal followed.

The trial court concluded that the FOIC abused its discretion in nullifying the state agency's employment decision. It reasoned that the settlement agreement between the parties, which was entered into during the course of an employee arbitration proceeding in accordance with the grievance procedure adopted by the department of correction and the union, was conclusive as to the issue of Nichols' suspension, and precluded the FOIC from making any determination on that issue. We agree.[4]

The plaintiff does not dispute that her refusal to make the attendance sheets available to Nichols violated the disclosure provisions of the FOIA. Upon finding a violation of the FOIA, the FOIC is authorized to order "the agency to comply forthwith with such relief as the commission, *in its sound discretion,* believes appropriate to rectify the denial of any right conferred by [the FOIA]." (Emphasis added.) General Statutes § 1-21i (b). This broad grant of authority to remedy violations of

---

[3] As decided by the trial court, the plaintiff's administrative appeal sought to challenge only the first two aspects of the FOIC ruling. The part of the FOIC decision requiring that the plaintiff make available to all correctional center employees information in their own personnel files, was not challenged in the trial court and is not part of this appeal.

[4] The trial court also determined that the FOIC's failure to adhere to the time limitations of General Statutes § 1-21i (b) invalidated its subsequent action. The court refused to give retroactive effect to Public Acts 1986, No. 86-408, § 2 (a). The plaintiff concedes that the court erred in this determination. See *Galvin* v. *Freedom of Information Commission,* 201 Conn. 448, 453–54, 518 A.2d 64 (1986); *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 518 A.2d 49 (1986). This erroneous determination, however, was harmless because we conclude that the additional ground relied upon for the court's judgment was proper.

the disclosure provisions of the FOIA, however, is not without limit.

The FOIC order at issue directly conflicted with, and had the effect of setting aside, a voluntary and mutual resolution of a dispute between two parties regarding a sanction to be imposed upon one of the parties. The order did not vindicate any interest of Nichols, who had resolved his grievance with his employer. Our law has long been clear that a "compromise agreement . . . if free from fraud, mistake or undue influence . . . is conclusive between the parties." *Azzolina* v. *Sons of Italy*, 119 Conn. 681, 689–90, 179 A. 201 (1935). Moreover, the settlement agreement here arose out of the grievance and arbitration process which was contractually agreed to by the parties. The FOIC's interference with this "favored means of settling differences"; *Board of Education* v. *AFSCME*, 195 Conn. 266, 270, 487 A.2d 553 (1985); was unwarranted. The FOIC's argument that public employee collective bargaining agreements and grievance settlements cannot supercede the provisions of the FOIA misses the mark. The agreement here did not alter the disclosure requirements of the FOIA in any way. Rather, it limited the remedial measures not directly related to disclosure of information which are available to the FOIC upon a finding of a violation of the provisions of the FOIA. Under these circumstances, the FOIC's interference with the private resolution of a dispute between the parties constituted an abuse of discretion.

In addition, in light of the grievance settlement entered into by Nichols, the FOIC abused its discretion in relying upon any prejudice to Nichols' ability to respond to the agency's charges at the August 21, 1984 interview to support its remedial order vacating the suspension and restoring lost wages. The settlement agreement did not address the merits of the respective charges and defenses of the parties thereto;

rather, it constituted a waiver by the parties of any claims arising out of the dispute over the appropriate disciplinary sanction to be imposed. Whether the denial of access to Nichols' records might have prejudiced his defense is irrelevant to the validity of the agreement, since Nichols waived his right to present any defense. In the absence of any suggestion that this waiver was the result of fraud, mistake, or undue influence, the agreement between Nichols and the agency is immune from collateral attack on the merits. *Azzolina* v. *Sons of Italy,* supra. Under the circumstances, the FOIC's remedial order amounted to such an impermissible collateral attack.

There is no error.

In this opinion the other judges concurred.