TOWN OF CANTERBURY *v.* ARTHUR J. ROCQUE, JR.,
COMMISSIONER OF ENVIRONMENTAL
PROTECTION
(AC 22518)

Schaller, Bishop and West, Js.

Argued December 11, 2002—officially released July 22, 2003

*Richard S. Cody*, with whom, on the brief, was *Jon B. Chase*, for the appellant (plaintiff).

*Karla E. Turekian*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Eliot D. Prescott*, assistant attorney general, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, the town of Canterbury (town), appeals from the judgment of the trial court dismissing on jurisdictional grounds its appeal from the administrative decision of the defendant, Arthur J. Rocque, Jr., the commissioner of environmental protection (commissioner), placing conditions on the town's application for permits for a municipal solid waste transfer station. We reverse the judgment of the trial court.

The following facts are relevant to our discussion. On November 1, 1996, the town submitted an application to the waste management bureau of the department of environmental protection (department), pursuant to General Statutes § 22a-208a, for permits to construct and to operate a municipal solid waste and bulky waste transfer station[1] on Packer Road in the town. The site was obtained by lease from Yaworski, Inc. (Yaworski),[2] and abutted a solid waste landfill operated by Yaworski.

[1] A solid waste and bulky waste transfer facility is used to transfer solid waste from a large number of smaller vehicles into a small number of larger vehicles for transportation to other sites for disposal or recycling.

[2] The commissioner allowed the following parties to intervene in the permit application hearing: Haul of Fame, Inc., Packer Ltd., Quinnebaug Valley Regional Resources, LLC, Denis Yaworski, James Yaworski, Jr., and Rose Yaworski. The commissioner referred to those parties, collectively, as Yaworski, Inc.

On May 22, 1997, Richard J. Barlow, chief of the waste management bureau, wrote to Neil Dupont, first selectman of Canterbury, stating that the department had made a tentative determination to approve the town's permit application. Additionally, Barlow reported that due to the significant public interest in the proposal, the commissioner had decided to conduct a public hearing on the town's application. That correspondence also directed the town to place an official notice of the commissioner's tentative determination and the hearing date in a newspaper of general circulation. Thereafter, on June 9, 1997, the town caused the publication in the Norwich Bulletin of a "Notice of Tentative Determination and Notice of a Public Hearing." The notice stated in part: "The Department of Environmental Protection . . . hereby gives notice [that] it has made a tentative determination to approve an application submitted by the Town of Canterbury . . . under section 22a-208a of the Connecticut General Statutes for permits to construct and operate a solid waste regional transfer station." In addition, that document informed the public that the department would hold a public hearing on the application in Canterbury on August 18, 1997.[3]

Subsequently, a department hearing officer conducted public hearings on thirty-three days between August 18, 1997, and June 30, 1998, and issued a pro-

---

[3] It is noteworthy that the notice, purportedly pursuant to General Statutes § 22a-6h, informs the public not only of the commissioner's tentative determination to grant the petitioners' permit application, but also informs the public of the date and time of the public hearing. Neither party has briefed the question of whether that hearing notice comports with the statute's requirement that the commissioner's notice of tentative determination include "a brief description of all opportunities for public participation provided by statute or regulation, including the length of time available for submission of public comments to the commissioner on the application . . . ." General Statutes § 22a-6h (7). It clearly does not inform the public of a right to petition for a public hearing pursuant to the provisions of General Statutes § 22a-208a (e).

posed final decision on March 31, 1999. During the continued hearing, on February 9, 1998, the town sought to introduce, as an exhibit, a petition for a hearing signed by forty-one persons. At the conclusion of the hearings, the hearing officer proposed that the application be granted subject to several conditions, and concluded that if the town adhered to the recommended terms and conditions of the draft permits, the proposed facility would be constructed and operated in accordance with all legal requirements. The first proposed condition related to the adjacent Yaworski landfill[4] and recommended that the application not be granted until the Yaworski landfill had been closed pursuant to an approved closure plan, including the installation of an approved landfill gas collection system. Additionally, the hearing officer recommended that certain named individuals and businesses associated with the Yaworski landfill, and responsible for the conditions at that landfill, should be excluded from managing the proposed facility. Finally, the hearing officer proposed that the town, prior to retaining any operator for the transfer station, should submit the name of the proposed operator to the commissioner for his review and written approval.

The parties filed exceptions to the proposed final decision and requested oral argument. The commissioner then appointed the director of the department's office of adjudications to render the final decision. On March 16, 2001, after briefs and oral argument, the com-

---

[4] Yaworski previously had applied for permits to construct and to operate a transfer station at the same site as the town's proposed facility. In his decision of December 23, 1994, the commissioner found that Yaworski's conduct in operating its landfill "reflects a thoroughgoing disregard for legal requirements as well as for the welfare of many individuals who live close to the [a]pplicant's existing solid waste facilities." He also found that granting the permits would subject those individuals to the risk of further adverse impact if Yaworski continued to violate the law and "would make a mockery of [the department's] solid waste regulatory program."

missioner issued his final decision, granting the town the requested permits subject to the previously recommended conditions. Thereafter, the town appealed to the Superior Court from the commissioner's decision, challenging the three conditions placed on the issuance of the permits to operate and to construct the transfer station. After briefing and oral argument, the court raised, sua sponte, the issue of whether it had subject matter jurisdiction to hear the appeal.

The court dismissed the appeal on the jurisdictional ground that the town had no statutory right to appeal. The court reasoned that the commissioner's determination was not a final decision in a contested case under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and, therefore, that the town was not entitled pursuant to General Statutes § 4-183 to appeal to the Superior Court. This appeal followed. Additional facts will be recited as appropriate.

The question for our determination is whether the statutory scheme relating to the permitting process for a solid waste transfer station, as set forth in § 22-208a (e), contemplates a right to appeal from an adverse determination by the commissioner under the circumstances presented by this case.

At the outset, we must first consider the applicable standard of review. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Miller's Pond Co., LLC* v. *Rocque*, 71 Conn. App. 395, 401, 802 A.2d 184, aff'd, 263 Conn. 692, 822 A.2d 238 (2003). Also, "[i]t is well established that, in determining whether a court has

subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 417, 797 A.2d 494 (2002).

To begin, we note that there is no common law right to judicial review of administrative determinations. "Judicial review of an administrative decision is a creature of statute." *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 799, 629 A.2d 367 (1993). "There is no absolute right of appeal to the courts from a decision of an administrative agency." (Internal quotation marks omitted.) *Fairfield* v. *Connecticut Siting Council*, 238 Conn. 361, 368, 679 A.2d 354 (1996). Therefore, for the Superior Court to have jurisdiction to hear an appeal from an administrative determination, there must be statutory authority for such an appeal. Whether an administrative decision is subject to appeal is governed by § 4-183 (a), which provides in relevant part that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ." A "final decision" is defined as an "agency determination in a contested case . . . ." General Statutes § 4-166 (3) (A). A "contested case" is defined as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." General Statutes § 4-166 (2).

Resolution of this appeal therefore requires us to determine whether § 22a-208a requires the commissioner to determine the legal rights, duties or privileges of a party "after an opportunity for hearing or in which a hearing is in fact held . . . ." General Statutes § 4-166 (2). The question is not answered simply by reference to the fact that a hearing was, indeed, held. Our Supreme

Court has determined that "even in a case where a hearing is 'in fact held,' in order to constitute a contested case, a party to that hearing must have enjoyed a statutory right to have his 'legal rights, duties, or privileges' determined by that agency holding the hearing. . . . [W]here no party to a hearing enjoys such a right, the Superior Court is without jurisdiction over any appeal from that agency's determination. . . . The test for determining contested case status has been well established and requires an inquiry into three criteria, to wit: (1) whether a legal right, duty or privilege is at issue, (2) and is statutorily required to be determined by the agency, (3) through an opportunity for hearing or in which a hearing is in fact held." (Citations omitted; internal quotation marks omitted.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 800–801. In other words, the court has read § 4-166 (2) "as manifesting a legislative intention to limit contested case status to proceedings in which an agency is required by statute to provide an opportunity for a hearing to determine a party's legal rights or privileges." Id., 811. "If a hearing is not statutorily mandated, even if one is gratuitously held, a 'contested case' is not created." *Dadiskos* v. *Connecticut Real Estate Commission*, 37 Conn. App. 777, 782, 657 A.2d 717 (1995). Accordingly, if the commissioner conducted the hearing gratuitously and not pursuant to a statutory entitlement to a hearing, the mere fact of the existence of the hearing, alone, would not entitle the applicant to an appeal.

We begin our discussion by examination of the statute in question. General Statutes § 22a-208a (e) provides in relevant part that "[t]he commissioner may hold a public hearing prior to approving or denying an application [for a solid waste facility] if in his discretion the public interest will be best served thereby, and shall hold a hearing upon receipt of a petition signed by at least

twenty-five persons. . . ." We note that this section provides a two-pronged route to a hearing: A hearing may be held if the commissioner determines prior to the disposition of an application that there is sufficient public interest to warrant a hearing. Additionally, the statute requires the commissioner to conduct a hearing on receipt of a petition signed by at least twenty-five persons. Although the parties disagree as to whether the discretionary portion of the statute establishes a statutory entitlement to a hearing so as to create a contested case, they do not disagree that if the underlying facts support the town's claim that a hearing was statutorily mandated as a consequence of the filing of a petition with the commissioner on February 9, 1998, then the town would be entitled to judicial review. The commissioner claims, however, that the hearing was conducted pursuant to his discretionary authority and not the mandatory provision. In support of that assertion, the commissioner claims that the request for a hearing was not filed in accordance with the time standard created by department regulations. The commissioner claims that § 22a-3a-6 (i) (2) of the Regulations of Connecticut State Agencies, pertaining to a request for a hearing concerning the commissioner's disposition of an application, sets forth the time limit in which a petition for a hearing may be filed pursuant to General Statutes § 22a-208a (e). That regulation requires, in part, that a hearing petition must be filed within thirty days of the commissioner's "action." Regs., Conn. State Agencies § 22a-3a-6 (i) (2).[5] That regulation, however,

[5] Section 22a-3a-6 (i) (2) of the Regulations of Connecticut State Agencies provides: "Whenever any statute or regulation provides for the filing of a request for hearing concerning the Commissioner's disposition of an application, the request shall be filed with the Office of Adjudications within the time prescribed by the applicable statute; and if not prescribed therein, by an applicable regulation other than this section; and if not prescribed therein, within thirty days of the Commissioner's action. The requester shall attach to the request a copy of the Commissioner's letter or other document disposing of the application."

Further, that regulation requires in relevant part: "(4) An answer or request

does not elucidate what event or activity is meant by the term "action." In this instance, the town filed a petition for a hearing on February 9, 1998, substantially more than thirty days after the publication of the commissioner's tentative decision on the application and his determination to conduct a public hearing due to the substantial public interest in the application.

The court determined that General Statutes § 22a-208a (e) does not create a statutory right to a hearing unless a petition for a public hearing is filed in accordance with the time frame set forth in § 22-3a-6 (i) of the regulations. The court characterized the hearing actually conducted by the commissioner as gratuitous. Characterizing the commissioner's issuance of a notice of tentative determination as an "action" in the terms of § 22a-3a-6 of the regulations, the court observed in conjunction with the submission of a petition on February 9, 1998, that "[t]his certainly exceeded the thirty day period for submitting a petition for a hearing, running from an action by the department. The department rule of practice does not contemplate that a gratuitous hearing may be 'converted' into a mandatory one by the filing of a petition for a hearing beyond the thirty day period of the rule." The court concluded that because the hearing was not mandated, there was no contested case under General Statutes § 4-166 (2), and, therefore, no final decision under General Statutes § 4-166 (3) (A). Accordingly, the court dismissed the appeal, reasoning that it lacked subject matter jurisdiction.

On appeal, the town argues that the Superior Court has jurisdiction to hear its appeal on the ground that General Statutes § 22a-208a (e) creates a right to a public hearing either by the commissioner's determination

for hearing shall state specifically any findings to which the respondent objects and any other grounds for contesting the order or the Commissioner's disposition of the application. . . ." Regs., Conn. State Agencies § 22a-3a-6 (i) (4).

of sufficient public interest or by the filing of a petition by at least twenty-five individuals, and that although the right to a hearing flows either from the commissioner's determination of public interest or on the filing of the requisite petition, they have satisfied both prongs of the statute.

Our analysis begins with the language of the statute itself as, in this instance, the meaning of the language appears plain and not does not appear amenable to other interpretations by reference to extrinsic sources. See *State* v. *Courchesne*, 262 Conn. 537, 570, 816 A.2d 562 (2003) (en banc). The relevant language is: "The commissioner may hold a public hearing prior to approving or denying an application if in his discretion the public interest will be best served thereby, and shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. . . ." General Statutes § 22a-208a (e). As stated, the statute sets forth two independent circumstances in which a hearing may be warranted. They are (1) when the commissioner determines that there is sufficient public interest and (2) when a petition has been timely filed by at least twenty-five persons. Because we believe that in this instance the town's right to appeal stems from having filed a petition for a hearing on February 9, 1998, before the commissioner's disposition of the application, we need not discuss whether the discretionary portion of the statute entitling the commissioner to conduct a hearing on the basis of his determination of public interest also constitutes a statutory entitlement to a hearing so as to fit this case within the group of those entitled to judicial review.

The commissioner argues that the provisions of § 22a-3a-6 are regulations of the public's right to petition for a hearing in this circumstance and that because the petition for a hearing was not filed within thirty days of the commissioner's "action," the hearing held in this

instance was not statutorily mandated. We disagree. Contrary to the commissioner's and the court's assumption, we do not believe that the commissioner's notice of tentative determination constituted an "action" so as to trigger the thirty day time limit for seeking a public hearing. We come to that conclusion on the basis of the clear language of General Statutes § 22a-208a (e), the language of § 22a-3a-6 of the regulations and our review of the department's regulatory scheme.

Here, the operative statute, General Statutes § 22a-208a (e), provides in relevant part that the commissioner "shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. . . ." The commissioner does not argue that this language is ambiguous, nor does he dispute that a hearing conducted pursuant to that provision would entitle a disappointed petitioner to seek judicial review. Rather, the commissioner argues that § 22a-3a-6 of the regulations, requiring that a petition for a hearing be filed within thirty days of the commissioner's "action," sets a reasonable parameter to the exercise of that right to a hearing. There can be no doubt that the department is statutorily authorized to adopt rules of practice to govern the manner in which it meets its statutory responsibilities. See General Statutes § 4-167. For purposes of this discussion, we assume without deciding, that the commissioner could validly adopt a regulation to govern the procedure for submitting a hearing petition pursuant to General Statutes § 22a-208a. There also is no dispute that § 22a-3a-6 is a regulation validly adopted by the commissioner. The question remains, however, whether that was violated by the town in this instance. We believe it was not.

We agree with the general proposition that if a board's time-tested interpretation of a regulation is reasonable, its interpretation should be accorded great weight by the courts. *Office of Consumer Counsel* v. *Dept. of Pub-*

*lic Utility Control,* 252 Conn. 115, 120, 742 A.2d 1257 (2000). Here, however, the commissioner's interpretation of § 22a-3a-6 of the regulations is facially unreasonable. That can be seen by reference to the department's entire regulatory scheme as well as to the underlying procedural facts of this case.

Contrary to the assertion of the commissioner, we read § 22a-3a-6 of the regulations as requiring a party seeking a hearing to file such a request with the commissioner within thirty days of the disposition of the application and not, as the commissioner urges, within thirty days of his notice of tentative determination. Thus, we believe, the "action" referred to in the regulation is the commissioner's disposition of the application. The regulation requires one seeking a hearing to attach to the hearing request a "copy of the commissioner's letter or other document disposing of the application" and in the request for a hearing to "state specifically any findings to which the respondent objects and any other grounds for contesting the order or the Commissioner's disposition of the application. . . ." Regs., Conn. State Agencies § 22a-3a-6 (i) (4). If, as the commissioner urges, his "action" is the filing of a tentative determination, one seeking a hearing could never comply with the regulation's requirement that the hearing requester attach a copy of the commissioner's disposition or set forth any basis for contesting the commissioner's disposition because, at that juncture, there would have been no disposition. One would have in hand no more than a tentative determination.

The notion that a request for hearing should be made after the commissioner's disposition is consistent with the department's regulations. Section 22a-3a-2 (c) (2) (I) of the regulations provides in relevant part that a proceeding terminates when "the Commissioner disposes of a license application, unless an opportunity for hearing is provided with respect to such disposition

. . . ." Thus, in accord with that regulation, in this case, in which an opportunity for a hearing is provided by General Statutes § 22a-208a (e), the proceedings are not terminated until a hearing has been conducted if one has been timely sought within thirty days of the commissioner's determination. In sum, a hearing is timely sought if a petition for a hearing is filed within thirty days of the commissioner's "action," which, in this case, means his disposition of the license application.[6]

That understanding of the term "action" is buttressed by reference to the utilization of the term "action" in the department's regulatory scheme. If, as the commissioner urges, "action" means no more than a proposed disposition, the term "proposed" action or "intended" action would have been utilized as it is employed elsewhere in the regulations.[7] To the contrary, the rule on which the commissioner relies in this instance, § 22a-3-6 of the regulations, does not require one seeking a hearing to make a proper request within thirty days of an "intended" or "proposed" action, but rather within thirty days of the action itself. It is a well settled rule of statutory construction, also applicable to regulations, that different sections should be construed in a manner that achieves harmony. See *Dept. of Income Mainte-*

---

[6] *The notion that one should seek a hearing after the commissioner's* disposition is not alien to the department's regulatory scheme. See, for example, § 22a-133v-7 of the regulations, providing for a hearing after the board of examiners of environmental professionals has issued a notice to deny, revoke or suspend the license of a licensed environmental professional.

[7] See, for example, § 22a-238-1 (c) of the regulations, concerning the commissioner's revocation of the appointment of a resource recovery facilities inspector. In relevant part, the rule provides that "[t]he commissioner shall give prior written notice of revocation to the certified inspector and the chief executive officer or officers employing said inspector setting forth the reasons for the *proposed action.* Within twenty days of receipt of notification the inspector may request a hearing, and such hearing shall be held if requested. . . ." (Emphasis added.) See also §§ 22a-3a-3, 22a-1a-1, 22a-231-1 and 22a-39-6 of the regulations, all of which utilize the modifiers "proposed" or "intended" to signify action that has not yet been determined.

*nance* v. *Watts*, 211 Conn. 323, 328, 558 A.2d 998 (1989); *Miller's Pond Co., LLC* v. *Rocque*, supra, 71 Conn. App. 411 (*Schaller, J.*, dissenting). Given the consistent use of the modifiers "proposed" or "intended" in the department's regulations to signify an event or disposition to take place in the future, it is unreasonable to claim, as does the commissioner, that the term "action" in § 22a-3a-6 of the regulations, without a modifier, means an intended or proposed action. In sum, we believe that the "action" referred to in § 22a-3a-6 of the regulations means the commissioner's disposition of the application. Thus, because a petition signed by more than twenty-five persons was submitted to the commissioner prior to his disposition of the town's application, it was timely filed. Because the petition was filed in accordance with the provisions of General Statutes § 22a-208a (e), the town was entitled to a hearing on its license application. Accordingly, the commissioner's disposition of the application was a final determination in a contested case, entitling the town to judicial review.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.