DEPARTMENT OF PUBLIC SAFETY *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 27850)

McLachlan, Gruendel and Berdon, Js.

Argued April 25—officially released September 4, 2007

*Lynn D. Wittenbrink*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (plaintiff).

*Mary E. Schwind*, director of adjudication, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (named defendant).

*Opinion*

GRUENDEL, J. The doctrine of mootness holds that before a claimed controversy is entitled to adjudication on the merits, it must be demonstrated that an actual controversy exists. In this appeal, we are asked to decide what role, if any, that doctrine plays in proceedings before the defendant freedom of information commission (commission).[1] The plaintiff, the department of public safety, appeals from the judgment of the trial court dismissing its appeal from the decision of the commission, which granted the request of a newspaper reporter to inspect certain police records. We reverse the judgment of the trial court.

The court's memorandum of decision reveals the following undisputed facts. "On January 5, 2004, a newspaper reporter for the New Haven Register, Michelle Tuccitto . . . requested records from the plaintiff . . . regarding an investigation into a triple homicide; however, Tuccitto was told that disclosure of the records would be prejudicial to the pending prosecution, by compromising the jury selection process and tainting witness recollection, and her request was promptly denied by a letter dated January 6, 2004. . . . Following the denial of her request, Tuccitto filed a formal complaint with the . . . commission on January 16, 2004. . . . On May 11, 2004, a hearing was held before a hearing officer for the commission. . . . The hearing

---

[1] Although named as defendants in this action, Michelle Tuccitto and the New Haven Register are not parties to this appeal.

officer issued a proposed final decision dated September 7, 2004, adverse to the [plaintiff]; the decision recommended that '[t]he [plaintiff] shall forthwith provide [Tuccitto and the New Haven Register] with access to inspect the requested records, other than signed statements of witnesses.' . . . Following the issuance of the hearing officer's proposed final decision [but before the commission's hearing thereon], Tuccitto sent a letter to the commission dated October 9, 2004, stating that 'the state police on [October 6, 2004] provided [her] with copies of the information [she] requested. Therefore, the commission hearing scheduled . . . on [her] complaint and any further action are no longer necessary.' . . .

"On October 27, 2004, at a regular meeting of the commission [at which] a representative of the [plaintiff] was present, but Tuccitto and the New Haven Register were not, the commission entertained the objection of the [plaintiff] to the entry of a final decision by the commission. . . . Specifically, the [plaintiff] argued that since the parties had resolved the matter, there was no contested case before the commission, and therefore the commission was without jurisdiction or simply unauthorized by the General Statutes to enter a final order. . . . Nevertheless, the presiding officer of the commission stated: 'I find that we do have jurisdiction. There was a contested hearing, there was a finding at the contested hearing, and the purpose of the session today is to accept, reject or modify that report. No new evidence comes before us for the purposes of this hearing. It becomes part of the archives here and part of the precedential material that other persons may consider in the future, and so I'm ruling against [the plaintiff] on jurisdiction.' . . . The commission voted to accept the proposed final order of the hearing officer.

. . . By a letter dated November 3, 2004, the commission sent notice to the parties of the final decision."[2] (Citations omitted.) From that judgment, the plaintiff appealed to the Superior Court pursuant to General Statutes §§ 1-206 (d) and 4-183 (a). By memorandum of decision filed June 26, 2006, the court dismissed the plaintiff's appeal, and this appeal followed.

I

The plaintiff first claims that the court applied an improper standard to its administrative appeal. Our review of that question of law is plenary. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002).

In its complaint, the plaintiff averred that the commission lacked jurisdiction to render a final decision "as there was no contested case before the [c]ommission for it to rule upon . . . ." In its memorandum of decision, the court acknowledged that "[w]hile 'contested case' status has been established as a prerequisite for Superior Court subject matter jurisdiction . . . the [plaintiff] now asks that this same requirement be placed on proceedings before the commission." (Citation omitted.) In resolving that issue, the court applied the deferential standard of review generally governing administrative appeals.[3] We agree with the plaintiff that application of that standard was improper.

[2] The commission's final decision contained the following order: "The [plaintiff] shall forthwith provide [Tuccitto and the New Haven Register] with access to inspect the requested records, other than signed statements of witnesses."

[3] The court stated: "Judicial review of [the commission's] action is governed by the Uniform Administrative Procedure Act . . . General Statutes § 4-166 et seq., and the scope of that review is limited. . . . A court must not retry a case or substitute its own judgment for that of the [commission]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [commission] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion. . . . Furthermore, [c]onclusions of law reached by the [commission] must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably

The plaintiff's appeal involved a question of first impression, namely, whether the commission is statutorily authorized to issue a final decision on a matter when, following a hearing thereon, it is informed by the plaintiff that the matter no longer is contested. In essence, the plaintiff claimed that the matter was moot, thereby depriving the commission of jurisdiction. The commission concedes that legal question has not been subject to judicial scrutiny previously. Therefore, its determination is not entitled to any deference. See *Raymond* v. *Freedom of Information Commission*, 75 Conn. App. 142, 149, 815 A.2d 226 (2003). "[I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 274 Conn. 119, 127, 874 A.2d 776 (2005); see also *National Labor Relations Board* v. *Brown*, 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965). "[A] determination regarding [an agency's] subject matter jurisdiction is a question of law . . . ." (Internal quotation marks omitted.) *Rweyemamu* v. *Commission on Human Rights & Opportunities*, 98 Conn. App. 646, 650, 911 A.2d 319 (2006), cert. denied, 281 Conn. 911, 916 A.2d 51 (2007). Accordingly, the plaintiff's administrative appeal properly is reviewed under the plenary standard.

## II

The plaintiff claims that the commission lacked jurisdiction to issue a final decision once Tuccitto notified the commission that the plaintiff had provided her with copies of the requested records and she requested that no further action be taken thereon. "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject

and logically follow from such facts." (Citations omitted; internal quotation marks omitted.)

matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . This concept, however, is not limited to courts. Administrative agencies . . . are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power . . . ." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996). As our Supreme Court has explained, "certain jurisdictional facts are essential to establish the statutory jurisdiction of tribunals of limited authority. The existence of these facts is fundamental to the power to entertain and adjudicate a proceeding on the merits. In short, such facts condition the power to act." (Internal quotation marks omitted.) *Stern* v. *Medical Examining Board*, 208 Conn. 492, 502, 545 A.2d 1080 (1988). Resolution of the plaintiff's claim, therefore, requires an examination of the relevant statutory provisions governing the commission.

The commission is entirely a creature of statute. See General Statutes § 1-205. It operates within the confines of the Freedom of Information Act (act); General Statutes § 1-200 et seq.; and the complementary rules of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. General Statutes § 1-206 (b) (1) provides in relevant part that "[a]ny person denied the right to inspect or copy records . . . of a public agency . . . may appeal therefrom to the [commission], by filing a notice of appeal with said commission. . . . Said commission shall, after due notice to the parties, hear and decide the appeal within one year after the filing of the notice of appeal. . . ." Likewise, General Statutes § 4-180 (a) provides that "[e]ach agency shall proceed with reasonable dispatch to conclude any matter pending before it and, *in all contested cases, shall render a final decision* within ninety days following the close of evidence or the due date for the filing of briefs,

whichever is later, in such proceedings." (Emphasis added.)

The General Assembly has defined a "contested case" as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by state statute or regulation to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ."[4] General Statutes § 4-166 (2). Our Supreme Court repeatedly has stated that the "test for determining contested case status has been well established and requires an inquiry into three criteria, to wit: (1) whether a legal right, duty or privilege is at issue, (2) and is statutorily required to be determined by the agency, (3) through an opportunity for hearing or in which a hearing is in fact held." *Herman* v. *Division of Special Revenue*, 193 Conn. 379, 382, 477 A.2d 119 (1984); see also *Fairfield* v. *Connecticut Siting Council*, 238 Conn. 361, 369, 679 A.2d 354 (1996); *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 800–801, 629 A.2d 367 (1993).

A

The first question to be resolved is whether the commission was statutorily authorized to issue a final decision in light of the procedural history of this appeal. We conclude that it was not.

Tuccitto's January 16, 2004 letter to the commission informed the commission that her legal right to inspect the requested records was at issue, and a hearing before a hearing officer followed. Subsequent to those events, the plaintiff furnished Tuccitto with copies of the

[4] Writing for a unanimous Supreme Court in *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 629 A.2d 367 (1993), Justice Callahan aptly described the definition of contested case provided by General Statutes § 4-166 (2) as "a grammatical quagmire . . . ." *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 808.

requested records. By letter dated October 9, 2004, Tuccitto notified the commission that the plaintiff "provided [her] with copies of the information [she] requested. Therefore, the commission hearing . . . on [her] complaint and any further action are no longer necessary."[5] In short, she informed the commission that no issue regarding access to the requested information remained.[6]

Pursuant to § 4-180 (a), the commission is required to render final decisions in all contested cases. The contested case test requires, inter alia, that Tuccitto's legal right "is at issue . . . ." *Herman* v. *Division of Special Revenue*, supra, 193 Conn. 382. Her October 9, 2004 letter notified the commission that no issue remained concerning her access to the requested information. Plainly, the case no longer was contested. Without a contested case, the commission was not statutorily permitted to issue a final decision.[7]

Tuccitto's October 9, 2004 letter effectively withdrew her complaint to the commission. Pursuant to General Statutes § 4-177 (c), "[u]nless precluded by law, a contested case may be resolved by stipulation, agreed settlement, or consent order or by the default of a party." Section 1-21j-39 of the Regulations of Connecticut State Agencies, titled in part, "Uncontested disposition of

---

[5] The commission's contention in its appellate brief that "since [the October 9, 2004] letter was not in evidence it was not bound to consider it" contradicts its "supplemental record summary" filed in the Superior Court on November 3, 2005. In that filing, Mary E. Schwind, the director of the commission's law department, certified that the October 9, 2004 letter was part of the record "upon which the [commission] acted."

[6] In addition, the plaintiff raised an objection to the entry of a final decision by the commission at the commission's October 27, 2004 meeting. At that meeting, the plaintiff argued that because "the parties [had] resolved the matter," the commission lacked statutory authority to issue a final decision.

[7] "If jurisdiction, although once obtained, has been lost, administrative proceedings must be dismissed." 2 Am. Jur. 2d 261, Administrative Law § 297 (2004).

complaint," likewise permits that "[u]nless precluded by law, where any matter is uncontested, a complaint, application or petition may be resolved by stipulation, agreed settlement, consent order, dismissal, administrative withdrawal without hearing or default. . . ." While acknowledging that Tuccitto's letter both informed it that the plaintiff had provided Tuccitto with copies of the requested information and requested that it take no further action on her complaint, the commission nevertheless maintains that Tuccitto never *formally* withdrew her complaint or submitted a formal settlement. That argument is disingenuous. Tuccitto attempted to withdraw her complaint in precisely the same manner in which she commenced it, through written letter to the commission.[8] Having accepted and acted on her letter to begin its inquiry, the commission cannot now complain that Tuccitto's subsequent written communication lacked the requisite formality.

Even in the face of a formal withdrawal or settlement, the commission argues that it retains discretion as to whether it shall issue a final decision in a given matter. It refers to the language of § 4-177 (c) and § 1-21j-39 of the Regulations of Connecticut State Agencies indicating that a contested case "may" be resolved via such procedures. "The word 'may,' unless the context in which it is employed requires otherwise, ordinarily does not connote a command. Rather, the word generally imports permissive conduct and the conferral of discretion." *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996). The commission's argument amounts to an end run around the contested case requirement. The commission is required to issue a final decision only in contested cases. General Statutes § 4-180 (a).

---

[8] In *Capone* v. *State*, Docket No. FIC 2006-236 (September 13, 2006), the complainant withdrew her complaint "by e-mail," which the commission accepted and, accordingly, dismissed the case.

Withdrawal, settlement and the like as provided in § 4-177 (c) and § 1-21j-39 of the Regulations of Connecticut State Agencies all present situations in which the matter before the commission no longer is contested. Thus, given that particular context, we conclude that the aforementioned language does not impart on the commission the discretion to issue a final decision in an uncontested case.[9]

Instructive is this court's decision in *Horn* v. *Freedom of Information Commission*, 16 Conn. App. 49, 547 A.2d 56 (1988). In that case, an employee of the department of correction filed a complaint with the commission in which he requested access to his personnel file. Id., 51. As we stated, "[f]ollowing the hearing before the [commission's] hearing officer but before the [commission] issued its final decision," the employee settled his dispute with the department of correction. Id. Despite that settlement, which we noted was "part of the administrative record before the [commission] at the time of its final decision"; id.; the commission proceeded to issue a final decision in which it found a violation of the act and entered certain orders against the plaintiff. Id., 51–52. On appeal, we concluded that the commission's action was improper: "The [commission's] order at issue directly conflicted with, and had the effect of setting aside, a voluntary and mutual resolution of a dispute between two parties regarding a

---

[9] We note that the present factual scenario is far from unique. For example, in *Young* v. *Mayor*, Docket No. FIC 2006-115 (September 13, 2006), *Winkler* v. *Commissioner of Transportation*, Docket No. FIC 2005-494 (September 13, 2006), and *Kane* v. *Board of Finance*, Docket No. FIC 2005-449 (January 11, 2006), a contested hearing was held and the complainant subsequently withdrew the complaint by letter. Like the complainant in the present case, the complainant in *Kane* "informed the commission that he no longer wished to pursue his complaint." In each of those cases, the commission dismissed the matter without reaching the merits of the complaint. Moreover, in *Young* and *Winkler*, the commission expressly commended "the parties on having reached a non-litigated settlement in [the] matter."

sanction to be imposed upon one of the parties. The order did not vindicate any interest of [the complainant], who had resolved his grievance with his employer. . . . The [commission's] interference with this favored means of settling differences . . . was unwarranted." (Citations omitted; internal quotation marks omitted.) Id., 53.

In the present case, the plaintiff and Tuccitto reached an agreement following the hearing, but before the commission issued its final decision. Tuccitto subsequently informed the commission that she had received the requested records and asked that no further action be taken on her complaint. The supplemental record filed by the commission expressly indicates that Tuccitto's October 9, 2004 letter was part of the administrative record before the commission at the time of its final decision. As in *Horn*, the commission's final decision did not vindicate any interest of Tuccitto, who had already resolved the matter with the plaintiff.[10] In that respect, it bears mentioning that the legal right at issue in any given complaint to the commission belongs to the complainant, not the commission. It is the complainant's interest that the commission is tasked with vindicating, not its own. The ultimate aim is the disclosure

[10] In an attempt to distinguish *Horn*, the commission states that the *Horn* court "did not conclude that the commission was without jurisdiction to issue a final decision" in that matter. It is axiomatic that an appellate decision stands only for those issues presented to, and considered by, the court in that particular appeal. See, e.g., *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 83 n.37, 808 A.2d 1107 (2002). Although the plaintiff in *Horn* claimed, as an alternate ground for affirmance, that the commission lacked statutory authority to proceed in that case, the *Horn* court stated that "[i]n light of our disposition of the case on the grounds upon which the trial court sustained the plaintiff's administrative appeal, we need not address this issue." *Horn* v. *Freedom of Information Commission*, supra, 16 Conn. App. 50 n.2. That clarification by the *Horn* court belies the trial court's statement that "the holding [of *Horn*] contemplates that the commission had jurisdiction." Hence, it cannot be said that *Horn* stands for the proposition presently espoused by the commission.

of requested information. Here, that aim was accomplished prior to the commission's issuance of a final decision.

The commission also presents a novel interpretation of the contested case requirement, urging that it is free to issue a final decision as long as the matter was contested at the time a hearing was held. We perceive two problems with that reading. First, our case law is clear that whether, in fact, a hearing is held is not the determinative factor. "If a hearing is not statutorily mandated, even if one is gratuitously held, a 'contested case' is not created."[11] *Dadiskos* v. *Connecticut Real Estate Commission*, 37 Conn. App. 777, 782, 657 A.2d 717 (1995); see also *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 704–705, 620 A.2d 780 (1993) ("[a]lthough an agency rule, policy or regulation may require a hearing, that hearing will not qualify the proceedings as a contested case unless the agency is statutorily required to determine the legal rights or privileges of the party aggrieved in that proceeding"); *Canterbury* v. *Rocque*, 78 Conn. App. 169, 174, 826 A.2d 1201 (2003) ("[t]he question [of whether the agency was required to determine the legal rights of a party] is not answered simply by reference to the fact that a hearing was, indeed, held"). Second, the commission's interpretation asks us to rewrite the test for determining whether a contested case exists. Under its interpretation, we would

---

[11] We note that proceedings before the commission do not conclude upon completion of a contested hearing. Rather, a proposed final decision subsequently is prepared. The commission then is free to accept, modify or reject that preliminary determination as it sees fit. See generally Regs., Conn. State Agencies § 1-21j-40. In light of the fact that settlement is favored; *Horn* v. *Freedom of Information Commission*, supra, 16 Conn. App. 53; see also *Young* v. *Mayor*, Docket No. FIC 2006-115 (September 13, 2006); *Winkler* v. *Commissioner of Transportation*, Docket No. FIC 2005-494 (September 13, 2006); and the fact that the commission's consideration of a given case is not completed until it issues a final decision, we are perplexed as to why Tuccitto's withdrawal of her complaint almost one month prior to the commission's final decision did not end the matter.

ask not whether a legal right, duty or privilege *is at issue*; see *Herman* v. *Division of Special Revenue*, supra, 193 Conn. 382; but rather whether the legal right, duty or privilege *was at issue when the hearing was held*. We decline that invitation.

As a creature of statute, the jurisdiction of the commission necessarily is restricted by the legislation from which it originates. "Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves." *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988); see also *State* v. *State Employees' Review Board*, 231 Conn. 391, 406, 650 A.2d 158 (1994) (administrative agency possesses no inherent power; its authority "is found in a legislative grant, beyond the terms and necessary implications of which it cannot lawfully function"). "[A]gencies must . . . act according to the strict statutory authority"; *State* v. *White*, 204 Conn. 410, 419, 528 A.2d 811 (1987); and they "cannot modify, abridge or otherwise change the statutory provisions under which [they derive] authority . . . ." *Waterbury* v. *Commission on Human Rights & Opportunities*, 160 Conn. 226, 230, 278 A.2d 771 (1971). This court has neither been presented with nor found any authority indicating that, in the absence of a contested case, the commission nevertheless may issue a final decision in a particular matter. Most importantly, the General Statutes do not confer that jurisdiction on the commission. If the commission's jurisdiction to issue a final decision is to be extended to situations involving uncontested cases, such extension remains the exclusive province of the legislature.

B

Our conclusion today is further buttressed by the doctrine of mootness, which holds that "[a] case

becomes moot when due to intervening circumstances a controversy between the parties no longer exists."[12] (Internal quotation marks omitted.) *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 439 n.3, 685 A.2d 670 (1996). The parties disagree as to whether that doctrine applies to proceedings before the commission.

In *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 688 A.2d 314 (1997), our Supreme Court addressed the question of whether the doctrine of mootness deprived the commission of jurisdiction to render a final decision. In that case, the complainant filed a complaint with the commission seeking access to certain documents of the plaintiff, which subsequently provided the documents to the complainant. As the court recounted, "[a]lthough the documents were voluntarily furnished to the complainant, the [commission] nonetheless proceeded with a contested hearing to determine whether the plaintiff was a public agency. After deciding that the plaintiff was a public agency, the [commission] then found that the plaintiff's voluntary disclosure had been untimely and ordered the plaintiff, in the future, to comply promptly with other disclosure requests." Id., 3. On appeal, the plaintiff argued that "because the documents had already been turned over to the complainant and, therefore, no practical relief could be granted on appeal"; id., 6; the matter was moot before the commission. For two reasons, our Supreme Court thought otherwise. First, promptness was an issue in that case, as the complainant had alleged that the documents were not provided to her within a reasonable

---

[12] The commission maintains, pursuant to Practice Book § 60-5, that we are not bound to consider the plaintiff's mootness claim because it was not raised before the commission or the trial court. We disagree. "[B]ecause mootness is jurisdictional, it is an issue that can be raised at any time regardless of whether it was preserved at trial." *Kondrat* v. *Brookfield*, 97 Conn. App. 31, 38, 902 A.2d 718, cert. denied, 280 Conn. 926, 908 A.2d 1087 (2006).

time. Id., 7. Thus, the fact that the requested documents were voluntarily furnished to the complainant did not resolve the question of whether they were timely furnished to the complainant.[13] Second, the court emphasized that the order issued by the commission was prospective in nature.[14] Id., 8. The court referred to its prior decisions in *Gifford* v. *Freedom of Information Commission*, 227 Conn. 641, 649 n.9, 631 A.2d 252 (1993), and *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 234 Conn. 704, 707 n.3, 663 A.2d 349 (1995), to support its conclusion that although the requested information was disclosed prior to the issuance of its final decision, the matter was not moot before the commission in light of the prospective nature of its order. For those two reasons, the court concluded that the controversy before the commission "was not moot." *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, supra, 9.

Notably, our Supreme Court in *Domestic Violence Services of Greater New Haven, Inc.*, did not declare the doctrine of mootness inapplicable to proceedings before the commission. To the contrary, it recited the tenets of that doctrine[15] and, in analyzing the plaintiff's

---

[13] Because the documents were not provided to her "until almost three months after her initial request and only three days before the scheduled [commission] hearing," the commission found that the plaintiff had violated the act "by failing to make available the requested documents in a prompt manner." *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, supra, 240 Conn. 8.

[14] By contrast, the final decision in the present case does not contain a prospective order. Prospective relief is warranted only when the particular facts at hand demand such orders. A review of several recent decisions of the commission indicates that prospective relief is the exception, rather than the norm.

[15] The court stated: "Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . We have consistently held that we do not render advisory opinions. If there is no longer an actual controversy in which we can afford practical relief to the parties, we must dismiss the appeal. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution

claim, explained why the doctrine did not apply under the facts of that case. That our Supreme Court in *Domestic Violence Services of Greater New Haven, Inc.*, recognized that a particular controversy before the commission could be deemed moot informs our analysis of the issue before us. Furthermore, in *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 855 A.2d 212 (2004), our Supreme Court noted that "[i]t is axiomatic that, when events have occurred that preclude a court from granting practical relief to a party through a disposition on the merits, the case is moot. . . . *The same is ordinarily true of an administrative agency.*" (Citation omitted; emphasis added.) Id., 684.

The commission argues that mootness is a judicial doctrine. The plaintiff responds by referring to several federal cases that discuss the similarity between administrative agencies and courts. See *Federal Maritime Commission* v. *South Carolina State Ports Authority*, 535 U.S. 743, 756, 122 S. Ct. 1864, 152 L. Ed. 2d 962 (2002) (administrative law judge functionally comparable to judge); *Butz* v. *Economou*, 438 U.S. 478, 512–13, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) ("adjudication within a federal administrative agency shares enough of the characteristics of the judicial process"); *Thomas Sysco Food Services* v. *Martin*, 983 F.2d 60, 62 (6th Cir. 1993) (concluding issue before administrative agency moot). The plaintiff additionally notes the similarity between

on the merits it must be justiciable. Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute: Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Citations omitted; internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, supra, 240 Conn. 6–7.

judges and commission officers under Connecticut law. Pursuant to § 4-177b, "the presiding officer may administer oaths, take testimony under oath relative to the case, subpoena witnesses and require the production of records, physical evidence, papers and documents to any hearing held in the case. . . ." Likewise, § 1-21j-8 of the Regulations of Connecticut State Agencies vests broad powers in the commission's hearing officers. Hearing officers possess discretion to "exclude irrelevant, immaterial or unduly repetitious evidence" and to "take administrative notice of judicially cognizable facts, including generally recognized technical or scientific facts within the commission's specialized knowledge and the records, decisions and orders in other commission cases. . . ." Regs., Conn. State Agencies § 1-21j-37 (a) and (d). They also must "give effect to the rules of privilege recognized by law in Connecticut where appropriate" and must recognize "the right of any party to cross examine . . . ." Id., § 1-21j-37 (a). Although administrative bodies such as the commission patently are not courts, those similarities cannot completely be discounted.

The commission also cautions that application of the doctrine of mootness to proceedings before it would "thwart the process by which it creates and develops a body of case law." That admonition is puzzling in light of the commission's representation to this court that an individual decision of the commission has no precedential value in subsequent appeals before it. At oral argument, the commission repeatedly was asked whether its final decisions carry any precedential value. The commission responded in the negative, insisting that each case before the commission is decided on its specific facts.[16] In addition, the commission routinely

[16] At one point, the commission stated that "if another case arises before the commission in which the plaintiff is a respondent, that case necessarily would be required to be decided on the facts of that specific case" and also indicated that the present case "cannot be used against the plaintiff in a future case." Despite that representation, we note that § 1-21j-37 (d) of the

applauds parties that settle prior to the issuance of a final decision on the merits,[17] despite the fact that such settlement ostensibly thwarts the development of commission case law.

The "overriding purpose" of the act is to encourage disclosure. *Wiese* v. *Freedom of Information Commission*, 82 Conn. App. 604, 612, 847 A.2d 1004 (2004). In the present case, disclosure of the requested information was accomplished prior to the issuance of a final decision. Both the complainant and the plaintiff informed the commission that they had resolved the matter. We see no good reason why, in such instances, the doctrine of mootness should not apply to proceedings before the commission. Application of that doctrine merely confirms that the commission is permitted to render final decisions only in contested cases. See General Statutes § 4-180 (a). We therefore conclude that when Tuccitto notified the commission that the requested records had been disclosed and requested that it take no further action on her complaint, the matter was moot.

The judgment is reversed and the case is remanded with direction to render judgment remanding the matter to the commission with direction to dismiss the complaint as moot.

In this opinion McLACHLAN, J., concurred.

Regulations of Connecticut State Agencies expressly permits the commission to "take administrative notice of . . . decisions and orders in other commission cases. . . ." Moreover, in response to the plaintiff's objection to the entry of a final decision at the October 27, 2004 meeting, the chairperson of the commission stated: "I find that we do have jurisdiction. . . . [The final decision] becomes part of the archives here and part of the precedential material that other persons may consider in the future, and so I'm ruling against you on jurisdiction."

[17] See footnote 9.

BERDON, J., concurring. I concur in the result on the basis of the fact that this case is moot, which is the only issue I would reach. Because our Supreme Court previously has indicated that the doctrine of mootness is applicable to the defendant freedom of information commission (commission),[1] I would not address the issues of statutory authorization or whether the trial court applied the proper standard of review.

In this case, the complaint filed by Michelle Tuccitto, a newspaper reporter for the New Haven Register, effectively was withdrawn when the plaintiff, the department of public safety, complied with Tuccitto's request to inspect certain records. This compliance occurred after a hearing before a hearing officer for the commission, in which the officer recommended a proposed final decision to the commission that it issue a formal order allowing for inspection of the requested records. Upon receipt of the proposed final decision, Tuccitto notified the commission that she had been provided with the information she had requested, and that "the commission hearing scheduled . . . on [her] complaint and any further action [were] no longer necessary." "A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 439 n.3, 685 A.2d 670 (1996). The case became moot when Tuccitto notified the commission that no further action was necessary because a controversy no longer existed between the parties. Notwithstanding this, the commission entered a formal order, as pointed out in the majority opinion.

In *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn.

---

[1] *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 6–9, 688 A.2d 314 (1997).

1, 4, 688 A.2d 314 (1997), the plaintiff also provided the information requested after a complaint was filed with the commission. Notwithstanding the voluntary compliance, our Supreme Court found that the controversy was not moot because the complainant at the hearing claimed that the documents were not provided to her within a reasonable time and the order issued by the commission was prospective in nature, ordering the plaintiff to comply strictly with provisions of the Freedom of Information Act in the future. Id., 9. In the present case, no such claim was made by Tuccitto and no prospective order was issued by the commission.

I understand the concerns of the commission, as it argued before this court that this position on mootness would encourage an agency "to violate the [Freedom of Information Act] with impunity. An agency could withhold records, which are clearly not exempt and not turn them over until a proposed final decision is issued that is adverse to the agency. . . . [Furthermore] only a small body of administrative law interpreting the [Freedom of Information Act] would ever develop because the commission would issue few . . . final decisions adverse to public agencies." The answer to these valid concerns, which I can fully appreciate, lies with the legislature.

I reluctantly concur in the result that this matter is moot.