LARRY LIVINGSTON *v.* DEPARTMENT OF
CONSUMER PROTECTION, LIQUOR
CONTROL COMMISSION
(AC 30510)

Bishop, DiPentima and Schaller, Js.

Argued December 4, 2009—officially released March 23, 2010

*Max F. Brunswick,* with whom, on the brief, was *Larry Livingston,* pro se, for the appellant (plaintiff).

*Matthew B. Beizer,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Larry Livingston, appeals from the judgment of the trial court dismissing his administrative appeal. The defendant, the department of consumer protection, liquor control commission (commission), denied the plaintiff's application for a renewal of his liquor permit for the Taurus Café in New Haven pursuant to General Statutes (Rev. to 2007) § 30-47 (1).[1] On appeal to this court, the plaintiff claims that the trial court improperly (1) affirmed the decision of the commission upholding the remonstrance[2] and thereby denied the renewal of his liquor permit on the basis of his failure to maintain employment and payroll records and to pay the associated taxes because the commission did not have the proper jurisdiction to adjudicate those matters and (2) affirmed the finding of the commission that the people who worked for his business were "employees." We affirm the judgment of the trial court.

The following facts and procedural history are not in dispute. At the time of the proceedings before the

[1] Hereinafter, all references in this opinion to § 30-47 are to the revision of 2007.

[2] Remonstrance is defined as "[a] presentation of reasons for opposition or grievance." Black's Law Dictionary (9th Ed. 2009). See footnote 3 of this opinion.

commission, the plaintiff was the permittee of the premises and the owner of the Taurus Café, located at 520 Winchester Avenue in New Haven. The plaintiff applied for a renewal of his liquor permit for the Taurus Café that was set to expire on September 26, 2007. Several residents of New Haven filed a remonstrance pursuant to General Statutes § 30-39 (c) and appointed attorney Peter A. Berdon as their agent.[3] The remonstrance challenged the plaintiff's suitability as a renewal applicant as well as the suitability of the location of the business.[4] The commission issued a notice of hearing on November 7, 2006, advising the plaintiff that he would be required to present facts and evidence in support of the renewal application of his liquor permit "relative to suitability of person and/or place as provided by Chapter 545 of the Connecticut General Statutes and the Regulations of the Connecticut State Agencies." A hearing was conducted over ten days between January 4 and May 31, 2007, and included testimony from the plaintiff, several remonstrants, residents in support of the renewal of the liquor permit, New Haven police officers, employees of the city of New Haven and others.

In its memorandum of decision, the commission made the following findings of fact: "[The plaintiff]

---

[3] General Statutes § 30-39 (c) provides in relevant part: "Any ten persons who are at least eighteen years of age, and are residents of the town within which the business for which the permit or renewal thereof has been applied for, is intended to be operated . . . may file with the department . . . in the case of renewal of an existing permit, at least twenty-one days before the renewal date of such permit, a remonstrance containing any objection to the suitability of such applicant or proposed place of business. Upon the filing of such remonstrance, the department, upon written application, shall hold a hearing and shall give such notice as it deems reasonable of the time and place at least five days before such hearing is had. . . . The decision of the department on such application shall be final with respect to the remonstrance."

[4] The remonstrance went on to allege more specifically that "[f]or many years, the Taurus Café has created significant disruption in a densely populated residential neighborhood, including loud noise and after-hours loitering and various types of disruptive behavior around the . . . property, resulting in many incidents involving the New Haven Police Department."

employs several people to work at his café in various capacities, including bartender, barmaid and security. These individuals are his 'employees,' in that he controls their work and directs them, their activities and their hours of employment at the Taurus Café. He is the person who hires them, and he has the ability to fire them. However, by his own admissions, [the plaintiff] does not maintain any employee or payroll records, such as W-2 forms. He does not file any returns on behalf of his employees at the Taurus Café, nor does he pay any federal or state unemployment taxes; thus, he does not report or pay the employer's share of the [federal Insurance Contributions Act] contribution for Social Security. Substantial evidence adduced at the hearing revealed that, in exchange for the services rendered by at least two employees, [the plaintiff] provides apartments rent free and that the market rate for such apartments is approximately $850 per month." The commission determined that, on the basis of this evidence, "it is clear that [the plaintiff] operates his business in a questionable manner with regard to state and federal labor and/or taxation laws. . . . [I]n accordance with § 30-47 (1), [the plaintiff] is financially irresponsible and disqualified as an applicant to obtain a renewal liquor permit. Accordingly, we hereby uphold the remonstrance with regard to the suitability of the applicant and deny [the plaintiff's] 2006-2007 renewal café liquor permit application, effective June 21, 2007."[5] (Citation omitted.)

Thereafter, the plaintiff appealed to the Superior Court pursuant to General Statutes §§ 4-183 (a)[6] and

---

[5] While we note that the commission's findings regarding the plaintiff's suitability are unrelated to the substance of the remonstrance, we do not address the issue of due process as to the sufficiency of notice or an opportunity to be heard because it was not raised.

[6] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

30-60.[7] See General Statutes § 4-166 et seq., the Uniform Administrative Procedure Act (UAPA).[8] The court dismissed the plaintiff's appeal. It concluded that "the commission's finding was supported by substantial and uncontroverted evidence and should not be disturbed." The court also determined that "the commission exercised its discretion to revoke the plaintiff's permit. . . . [T]his penalty was well within the limits prescribed by the law and should not be disturbed." Thereafter, the plaintiff appealed to this court.

Our standard of review is well established. "Ordinarily, [o]ur resolution of [administrative appeals] is guided by the limited scope of judicial review afforded by the [UAPA] to the determinations made by an administrative agency. [W]e must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . .

"A reviewing court, however, is not required to defer to an improper application of the law. . . . It is the function of the courts to expound and apply governing

[7] General Statutes § 30-60 provides in relevant part: "Any applicant for a permit or for the renewal of a permit for the manufacture or sale of alcoholic liquor whose application is refused or any permittee whose permit is revoked or suspended by the Department of Consumer Protection . . . may appeal therefrom in accordance with section 4-183. . . ."

[8] The commission is an agency within the meaning of § 4-166 (1) and is subject to the provisions of the UAPA. *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 211, 567 A.2d 1156 (1989).

principles of law. . . . We previously have recognized that the construction and interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference. . . . Questions of law [invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Because this case forces us to examine a question of law, namely, the construction and interpretation of [statutes] as well as the standard to be applied, our review is de novo." (Internal quotation marks omitted.) *Groton Police Dept.* v. *Freedom of Information Commission,* 104 Conn. App. 150, 156, 931 A.2d 989 (2007).

I

First, the plaintiff claims that the court improperly affirmed the decision of the commission upholding the remonstrance and thereby denying the renewal of his liquor permit on the basis of his failure to maintain employment and payroll records and to pay the associated taxes because the commission did not have jurisdiction to adjudicate those matters. More specifically, the plaintiff claims that § 30-47 does not give discretionary powers to the commission to determine federal or state tax or labor law issues and to rely on those determinations in denying his renewal application.[9] We do not agree.

Section 30-47 provides in relevant part: "The Department of Consumer Protection may, in its discretion,

[9] The plaintiff also appears to argue in his brief that there was never an actual finding that he was in violation of any tax or labor laws, but if there had been a finding that he had violated those laws, then the commission would have been within its discretion to deny the renewal permit application. Because we determine that the commission's decision was within its discretion pursuant to § 30-47 (1), there was no requirement for the commission to make a specific finding of any tax or labor law violations. Accordingly, we need not address this claim.

suspend, revoke or refuse to grant or renew a permit for the sale of alcoholic liquor if it has reasonable cause to believe: (1) That the applicant or permittee appears to be financially irresponsible or neglects to provide for his family, or neglects or is unable to pay his just debts . . . ." The portion of the statute relating to an applicant or permittee's financial irresponsibility rarely has been addressed by our courts. See *Boncal* v. *Liquor Control Commission*, 148 Conn. 648, 652–53, 173 A.2d 593 (1961). There is no case law, statute or regulation providing clear guidelines to determine what types of actions constitute financial irresponsibility on the part of an applicant or permittee. Because the plaintiff is essentially claiming that, on the basis of the factual findings it made, the commission misconstrued § 30-47 to find him financially irresponsible, the issue before us is one of statutory construction.

"Our Supreme Court previously has instructed that in construing statutes, [the] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citations omitted; internal quotation marks omitted.) *Groton Police Dept.* v. *Freedom of Information Commission*, supra, 104 Conn. App. 157.

Section 30-47 clearly states that the commission may refuse to renew a liquor permit if the facts constitute one of several circumstances. By the statute's use of the phrase, "in its discretion," the plain words of § 30-47 indicate that the legislature intended to allow the commission to consider a variety of facts in reaching its determination. "Financially irresponsible" is a broad term that could encompass many possible factual situations. The legislature chose not to include more specific language, examples or exemptions within this section. Importantly, our Supreme Court has held that "[u]nder the statute[s of the Liquor Control Act (act), General Statutes § 30-1 et seq.], the resolution of factual matters with respect to applications for liquor permits is vested in the liquor control commission and it has a liberal discretion in determining the suitability of a permittee." *Brown* v. *Liquor Control Commission*, 176 Conn. 428, 430, 407 A.2d 1020 (1979).

"[Section] 30-47 gives to the commission the power to refuse a permit if the applicant appears to be 'financially irresponsible' . . . ." *Boncal* v. *Liquor Control Commission*, supra, 148 Conn. 652. Further, the act in its entirety provides the commission with broad powers of revocation and suspension once a liquor permit has been granted. See General Statutes § 30-1 et seq. In fact, in *Dadiskos* v. *Liquor Control Commission*, 150 Conn. 422, 190 A.2d 490 (1963), our Supreme Court construed General Statutes § 30-55, which provides the commission with the discretion to revoke a valid liquor permit, and stated that "[t]he obvious legislative intent of this statute is, inter alia, to empower the commission to inquire whether a permittee who presumably had been a suitable person when he was granted a permit has remained so and to revoke the permit if he has not. See [General Statutes §§] 30-39, 30-40, 30-47, 30-62 [and] 30-81. The inquiry presents an issue of fact. . . . The commission cannot, of course, act in an arbitrary or

unreasonable fashion." (Citation omitted.) *Dadiskos* v. *Liquor Control Commission,* supra, 425. This holding further supports the contention that the commission maintains a broad discretion throughout all stages of liquor permitting to determine whether an applicant or permittee is suitable under all of the factual circumstances.

"Under [chapter 545 of the General Statutes], the resolution of factual matters with respect to applications for liquor permits is vested in the liquor control commission and it has a liberal discretion in determining the suitability of a permittee." *Brown* v. *Liquor Control Commission,* supra, 176 Conn. 430. Therefore, the commission has a broad discretion to determine whether its factual findings fit within the statutory scheme. We conclude that the language in § 30-47 plainly provides the commission with the broad discretion to determine an applicant's suitability for a liquor permit and to determine if a set of factual findings will constitute "financial irresponsib[ility]," and that the commission did not abuse that discretion in determining that the facts in this case constitute financial irresponsibility on the part of the plaintiff.

The testimony presented at the hearing supports the commission's factual findings that the plaintiff employed people who worked for his business and received value in return for that work, in the form of rent free apartments, for whom he did not keep payroll records of any kind, file tax reports or pay any unemployment taxes to the government. On the basis of the factual finding that the plaintiff had employees and did not properly file tax returns or pay required taxes for those employees, the commission had reasonable cause to believe that he was financially irresponsible, and the commission did not abuse its discretion in upholding the remonstrance and denying the renewal of his liquor license. Therefore, we conclude that the court properly

affirmed the commission's decision and dismissed the appeal.

## II

Next, the plaintiff claims that the court improperly affirmed the finding of the commission that the people who worked for him were "employees."[10] Specifically, the plaintiff claims that the people that the commission found to be "employees" are actually members of his family and therefore do not fit within any definition of "employees." We are not persuaded.

The court concluded that "[i]t is uncontroverted that [Julius Dennis and Ernestine "Tina" Pagan] (1) were hired and can be terminated by [the plaintiff]; (2) work a regular schedule at the permit premises; (3) work under the control and supervision of [the plaintiff]; and (4) receive something of value from [the plaintiff] in exchange for their work. While the plaintiff may have testified to the contrary, these facts conclusively establish that, as a matter of law, [Pagan] and [Dennis] are employees of [the plaintiff]."

"Employee" is defined in part II of chapter 558 of the General Statutes, titled "Wages," as including "any person suffered or permitted to work by an employer . . . ." General Statutes § 31-71a (2). "Employer" is defined as including "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any

---

[10] The plaintiff claims that the people who work for him are not "employees" as defined by General Statutes § 31-72. Section 31-72, which falls within chapter 558 of the General Statutes titled, "Wages," provides a civil action to collect a wage claim, fringe benefit claim or arbitration award. It is unclear why the plaintiff refers to this particular statute, but we address the definition of "employee" within the statutory chapter on wages.

of the same, employing any person . . . ." General Statutes § 31-71a (1).

The following additional facts are relevant to our disposition of this issue. Although the plaintiff clearly stated in his testimony during the administrative hearing that he did not file payroll records because he had "no employees," he also testified that several people, who he asserts are members of his family, worked for him. He testified that a man named Julius, who worked as a bouncer or doorman, has a regular schedule and lives in an apartment that is owned by another family member of the plaintiff, free of any rental payments, in exchange for working in the bar. The plaintiff testified that a woman named Tina, whom he identified as his cousin, worked as a bartender at the Taurus Café and also received an apartment for free in exchange for her work at the bar.[11] The plaintiff testified that Pagan also has a regular schedule, working five nights per week. The plaintiff also testified that some other "family members," including his daughters, nieces and nephews, also help out by working at the bar on occasion. Although the plaintiff testified that the people who helped out at the Taurus Café were "family members" and not employees, neither the commission nor the court made a factual finding as to the status of those individuals.

The plaintiff maintains that Pagan, Dennis and others who worked at the Taurus Café are "family members," and not employees. The plaintiff, however, does not refer to any legal precedent that supports his claim that "family members" cannot be considered employees. In fact, at one point in his hearing testimony, the plaintiff stated that Dennis, who works for the plaintiff as a bouncer or doorman, was a longtime *friend* of the family.

---

[11] When asked directly, the plaintiff admitted that he had not reported the income of free rent received by Dennis or Pagan.

During the hearing on May 31, 2007, in response to a direct inquiry by Berdon, Commissioner Elisa Nehas, the presiding hearing officer, clarified her understanding of the testimony by stating that "I think that we understand that he has people who are working there, helping him out, whatever they do, who he has no payroll records for." During the hearing it was made clear that Berdon, on behalf of the remonstrants, was bringing forth a claim that the plaintiff was an unsuitable permittee because he was violating the law by not maintaining the proper records with regard to employees. The plaintiff's attorney responded to this claim, stating, "that would be for the commission to determine, and we can move along." Later, Commissioner Angelo Faenza clearly stated to the plaintiff, who was under oath: "It's my understanding that you have employees that are not paid, and you have no records of payment to them." In response to the plaintiff's statement that Dennis gets "rents free in return for his service," Faenza stated that "there's no payroll, you don't pay him by the hour, there's no taxes taken out, there's no unemployment compensation. We all understand that if you run a business, family or not, you have to have payroll records. You have to pay compensation, you have to pay withholding taxes, social security, and there are no records as such." Attorney Lynn Fiore, appearing on behalf of the department of consumer protection, clarified that "[f]or tax purposes [the use of an apartment free of rent] is income. It's whatever consideration is given. . . . There's consideration being given for tax purposes that needs to be reported. It's not just income in a paycheck. It's whatever you get in consideration for your services." The plaintiff then testified that there is one tenant living in the same building as Pagan and Dennis, in a similar apartment, who pays $850 in monthly rental payments.

The evidence on the record supports the determination of the commission that the people who worked at

the bar were, in fact, employees for the purposes of the tax and labor laws. Regardless of whether they were family members or not, a review of the record clearly reveals that the plaintiff had control over Pagan and Dennis in terms of their actions at the Taurus Café and that, according to the plaintiff's testimony, they were working at the will and in the interest of the plaintiff, who was the owner of the Taurus Café, and managed its day-to-day operations. Accordingly, we conclude that the court properly concluded that the commission did not abuse its discretion in finding that the people who worked at the Taurus Café were employees.

The judgment is affirmed.

In this opinion the other judges concurred.