## COUNCIL 4, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO *v.* STATE ETHICS COMMISSION ET AL.

Superior Court, Judicial District of New Britain
File No. CV-09-4020353S

Memorandum filed July 26, 2010

*Proceedings*

*J. William Gagne, Jr.*, for the plaintiff.

*Barbara E. Housen*, general counsel, and *Cynthia Isales*, assistant general counsel, for the defendants.

COHN, J. The plaintiff, Council 4, American Federation of State, County and Municipal Employees, AFL-CIO (union), appeals to the Superior Court opposing a February 26, 2009 advisory opinion (no. 2009-3) of the defendant citizen's ethics advisory board (ethics board), a unit of the office of state ethics.[1] The challenged advisory opinion concluded that workers' compensation commission (WCC) hearing reporters were

---

[1] The court has jurisdiction of the union's appeal of an advisory opinion of the ethics board. General Statutes §§ 1-81 (a) (3), 4-176 (h) and 4-183 (a). The union is aggrieved as advisory opinion no. 2009-3 affects a current labor agreement between the union and the workers' compensation commission.

not permitted under the state ethics code, General Statutes § 1-84 (c), to use five hours of state compensated time to prepare transcripts, privately sold by the hearing reporters.

By way of context, Superior Court reporters and monitors receive compensation in two forms. They are entitled to a state salary; they are also entitled "[i]n addition to [their state salary] . . . to charge a party or other individual [an amount] for each transcript page which is or previously was transcribed from the original record . . . ." General Statutes § 51-63 (c).[2] In 1994, the former state ethics commission[3] applied § 1-84 (c)[4] to question the right of the court reporters to charge additional fees for expediting transcripts. The ethics opinion also impliedly raised the issue of the right of court reporters to prepare transcripts for sale on state time—that is, their time as a state employee was also taken up with a project that allowed them to receive financial gain for themselves.

In 1994, the General Assembly attempted to resolve the effect of the ethics commission's opinion on § 51-63 (c). This section, with the 1994 amendment, now concludes: "The Chief Court Administrator shall adopt policies and procedures necessary to implement the provisions of this section, including, but not limited to, the establishment and administration of a system of

---

[2] While there are language differences not relevant for this opinion, the court notes that the current revision of § 51-63 (c) is virtually identical to General Statutes (1949 Rev.) § 3607 in that the reporters are compensated in part by selling transcripts of the court proceedings. Section 51-63 (c) was amended in 2004 to increase the amount that the court reporters may charge to $3 per transcript page, except that there are lower rates for the state and municipalities. See Public Acts 2004, No. 04-184, § 1.

[3] This state agency was abolished in 2005 when the office of state ethics was created. Public Acts 2005, No. 05-183, § 3.

[4] General Statutes § 1-84 (c) provides in relevant part: "No public official or state employee shall . . . use his public office or position . . . to obtain financial gain for himself . . . ."

fees for production of expedited transcripts." General Statutes § 51-63 (c); see Public Acts 1994, No. 94-64, § 1.

The legislative history to the 1994 amendment recognized that court reporters had traditionally "set other work aside" while they processed expedited transcript requests, and that this practice would continue after the amendment under procedures adopted by the chief court administrator. See 37 S. Proc., Pt. 5, 1994 Sess., p. 1756, remarks of Senator George Jepsen. The ethics board interprets this amendment to allow court reporters, as directed by judicial administration, to prepare transcripts on state time, while waiting for court to commence or reconvene.[5] Ethics Board brief at 16–17; statement of counsel at June 24, 2010 hearing in this court.

While the 1994 legislation resolved the issue of court reporters preparing transcripts on state time, it did not resolve the issue in this case involving WCC stenographers, represented by the union. The WCC stenographers are subject to another subsection, also dating from 1949, which provides as follows: "Official and assistant stenographers in the offices of the workers' compensation commissioners shall be entitled, in addition to the compensation otherwise provided for, to the same fees for preparing transcripts as are provided for reporters in the Superior Court." General Statutes § 51-63 (e); General Statutes (1949 Rev.) § 3607.

The above quoted statute led to the ethics board's issuance of advisory opinion no. 2009-3. The ethics board made the following relevant findings of fact:

1. The WCC hearing reporters take verbatim testimony of formal hearings and provide transcripts as required.

---

[5] The general rule of the Judicial Branch is that court reporters may prepare transcripts in office while court is in recess. (Return of Record, ROR, pp. 49–50.)

2. The reporters are also responsible for performing other clerical duties, including scheduling hearings, typing findings, entering data and filing.

3. The reporters are union members and hold forty hour per week positions.

4. The reporters are allowed by subsection (e) of § 51-63 to follow the fee schedule of subsection (c) of the statute. WCC hearing reporters do not produce a transcript for every formal hearing. If a party orders a transcript, the hearing reporter then produces it and bills for it as provided by statute.

5. "Historically, WCC hearing reporters were allowed to use state time to produce transcripts for which they were paid by private parties. In 1993, a WCC chairman sought to limit the amount of time spent on such . . . transcripts. The [u]nion filed a prohibited practice charge alleging a change in working conditions. WCC entered into a stipulated agreement with the [u]nion in 1997 regarding the use of state time for the production of transcripts."[6]

6. This stipulated agreement allowed the reporters to make use of a five hour period on Fridays to work on transcripts (this was a time at which commissioners generally were not conducting hearings). If emergencies arose, alternate arrangements would be made to give the reporter five staggered hours. The agreement also forbad the reporters from using state equipment to prepare the transcripts. It mandated that the reporters

---

[6] The union submitted, at the court's request, a December 3, 1993 memorandum from the chairman of the WCC stating that the WCC reporters were to have one hour a day to prepare transcripts requested by the commissioners only (and thus by implication disallowing the preparation of private party transcripts on state time). The chairman also declared that "[f]or purposes of billing outside attorneys, you as hearing reporters are considered self-employed and all appropriate tasks such as billing, collecting, and bookkeeping are to be done outside the confines of the [w]orkers' [c]ompensation office."

finish the transcripts no later than forty-five days, or the work would be sent to an independent stenographic contractor of the WCC's choice. Finally, the WCC was to receive a copy of the transcript without charge.

7. The five hour transcript preparation time applied only to "those transcripts for which hearing reporters will be paid by the private requesting parties."

8. "The WCC and the [u]nion are in the process of renegotiating this contract. The WCC has sought guidance from the [o]ffice of [s]tate [e]thics as to the propriety of the above-stated agreement." (Return of Record, ROR, pp. 78–79.)

The ethics board issued a draft response to the WCC on February 19, 2009, (ROR, pp. 17–21) and after a meeting of February 26, 2009, issued advisory opinion no. 2009-3. The ethics board concluded that "[i]t is not permissible, under the Code of Ethics, for WCC hearing reporters to use five hours of state-compensated time to engage in activity that generates income from private sources." (ROR, p. 80.)

The ethics board gave three reasons for this conclusion:

1. While the WCC hearing reporters may charge privately for work product arising from their state positions, they may not be privately paid for work done on state time. The general rule of § 1-84 (c) is that a state employee may not be paid privately to do what he or she is essentially already required to do as part of his or her state job. There is no statutory exemption with respect to WCC reporters allowing for preparing transcripts on state time.

2. "It is irrelevant that a union contract allows for the creation of transcripts for which hearing reporters will be paid by the requesting parties. . . . [A]bsent an exception in the Code of Ethics or elsewhere in the

[G]eneral [S]tatutes, the Code of Ethics supersedes a union contract clause that sanctions a violation of the Code of Ethics."

3. Even if the purpose of the five hour provision is to avoid delay in producing transcripts for private attorneys, "[i]n fact there are many activities which, although potentially beneficial to the state, are not permissible under the Code of Ethics." In any event, any problem in producing transcripts is ameliorated by the union contract that allows for an independent stenographic contractor under certain conditions. (ROR, pp. 80–82.)

This appeal followed from the issuance of advisory opinion no. 2009-3. In reviewing an agency's declaratory ruling, the court's "ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 804, 942 A.2d 305 (2008); see also *Autotote Enterprises, Inc.* v. *State*, 278 Conn. 150, 154, 898 A.2d 141 (2006).

Construction of a statute is a legal matter for the court to decide. See *Livingston* v. *Dept. of Consumer Protection*, 120 Conn. App. 92, 97, 991 A.2d 570 (2010). Furthermore, "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield

absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 8–9, 976 A.2d 668 (2009).

The union first contends that the ethics board erred in not treating court reporters under § 51-63 (c) and WCC reporters under § 51-63 (e) equally. From a legal standpoint, the court cannot agree with the union. The court reporters' provision, § 51-63 (c), is more detailed than the WCC reporters' provision, and indicates that their use of state time is to be subject to procedures adopted by the chief court administrator. The WCC reporters' provision merely provides that these reporters, in addition to compensation otherwise stated, are entitled to charge for transcripts at the same rate as the court reporters. General Statutes § 51-63 (e).

The language of subsection (e) does not provide the ethics board with a particular exemption to the general rule of § 1-84 (c) that state employees may not conduct private business while receiving state compensation. The union relies on *State* v. *Connecticut Council 4, CEU, AFSCME*, 7 Conn. App. 286, 508 A.2d 806 (1986). But this case only stated that court reporters under § 51-63 (c) and WCC reporters under § 51-63 (e) were permitted to charge private parties for preparing transcripts, while stenographers at the motor vehicle department were not. Id., 290–91. The case, to the contrary, strengthens the position of the ethics board. The opinion points out that the motor vehicle employees, as in the case of WCC reporters, lack specific statutory authorization for their contended activities. Id.[7]

---

[7] The motor vehicle stenographers did not even have permission to charge; while here the WCC reporters have permission to charge, but § 51-63 (e), unlike § 51-63 (c), as interpreted, does not authorize preparation of transcripts on state time.

Clearly the ethics board in its opinion was supporting the legislative directive of § 1-84 (c)[8] to oppose state employees who use a public office for financial gain. See *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 813, 733 A.2d 287 (1999). Furthermore, the ethics code for state employees should not rise or fall on whether the WCC, or any other agency, has traditionally allowed an activity prohibited by the code.

The court's conclusion remains the same if the issue is analyzed from the factual record. Here, the court must employ the "substantial evidence" test. "Under the [Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.], [w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Internal quotation marks omitted.) Id., 824.

The record before the ethics board included a personnel specification for "hearing reporter 2." (ROR, p. 3.) The "examples of duties" portion of the specification includes recording testimony as well as preparing transcripts. Unlike the court reporters, however, the specification also sets forth that the hearing reporters 2 also have general clerical duties. During the meeting before

---

[8] The union argues that the issue in this case has been resolved because the former ethics commission ruled in its 1994 opinion that the court reporters did not violate § 1-84 (i) relating to obtaining state contracts through open bidding. But this provision is not relevant to the ethics board's conclusion that the union employees violated § 1-84 (c).

the ethics board, the distinction between court reporters and WCC reporters was emphasized. (ROR, pp. 41, 43.) The record thus supports with substantial evidence the ethics board's factual conclusion of a difference between court reporters and WCC reporters.[9]

The union next argues that the stipulated agreement between it and the WCC should govern over the provisions of § 1-84 (c). It is well settled precedent, however, that a public agency may not contract away its statutory obligations, and any agreement that requires a public agency to act contrary to state law is null and void. See *Lieberman* v. *Board of Labor Relations*, 216 Conn. 253, 271, 579 A.2d 505 (1990) (setting aside agreement to destroy personnel records); *Maher* v. *Freedom of Information Commission*, 192 Conn. 310, 318, 472 A.2d 321 (1984) (accepting prevalence of state over federal law).

The union argues to the contrary based on *Horn* v. *Freedom of Information Commission*, 16 Conn. App. 49, 52, 547 A.2d 56 (1988), that a settlement arising out of a grievance process should not have been rejected by the freedom of information commission. But in *Horn*, the court declared that the agreement in that case "did not alter the disclosure requirements of the [Freedom of Information Act, General Statutes § 1-200 et seq.] in any way. Rather, it limited the remedial measures not directly related to disclosure of information which are available to the [freedom of information commission] upon a finding of a violation of the provisions of the

---

[9] As indicated in footnote 6 of this opinion, the union submitted to the court the WCC chairman's memorandum of December 3, 1993, which stated in relevant part: "Other related job duties to be done by the hearing reporter will be designated by the [f]iscal [a]dministrative [o]fficer when the hearing reporter does not have a [f]ormal [h]earing." This statement supports the conclusion of the ethics board that the WCC reporters' duties are distinguishable from that of a court reporter who does not have "[o]ther related job duties . . . ."

[Freedom of Information Act]." Id., 53. Here, by contrast, the union contends that the basic principle of § 1-84 (c) that the ethics board seeks to maintain may be set aside by an agreement between the union and the WCC. *Horn* does not extend that far.

The court has reviewed the contentions of each party[10] and concludes that the ethics board has not acted arbitrarily or illegally in issuing its advisory opinion. Therefore the appeal is dismissed.

[10] In addition to the 1994 advisory opinion of the former ethics commission, each party also argues by analogy from other opinions of the former ethics commission. These opinions are not sufficiently on point for the court to rely on them.